## J. H. ARNOLD & CO. v. GIBSON.
### (7 Div. 650.)

Supreme Court of Alabama.     April 14, 1927.

Rehearing Denied June 2, 1927.

1. **Factors** ⬤➞11—"Your consigned cotton," in broker's letter to consignor, means that cotton was delivered for care or sale, title to remain in consignor until disposed of or held until market declined and he failed to advance margins.

"Your consigned cotton," as used in letter addressed to consignor stating that defendant had transferred such cotton, and, if market declined to where margin was needed, defendant had right to close cotton out unless margin was furnished,˙ imports that cotton was delivered to defendant for care or sale, title to remain in consignor until disposed of or held at his will until market declined and he failed to advance margins '(citing Words and Phrases, Second Series, "consign").

2. **Contracts** ⬤➞333(1)—Pleader must set up facts removing ambiguity in contract pleaded.

Where contract declared on is ambiguous and probably depends to some extent on previous dealings between parties, in absence of general custom or usage of which courts take judicial notice, pleader should set up facts removing ambiguity and rendering contract certain, and, in absence of such averments, evidence explanatory of writing is not admissible, and contract will be held void.

3. **Evidence** ⬤➞34—Courts take judicial notice that New York Cotton Exchange is operated *under general supervision of United States Department of Agriculture under Cotton Futures Act* (U. S. Comp. St. §§ 6309e, 6309i).

Courts take judicial notice that New York Cotton Exchange is operated under general supervision of United States Department of Agriculture under Cotton Futures Act (U. S. Comp. St. §§ 6309e, 6309i).

4. **Factors** ⬤➞43—Count for breach of contract, based on New York Cotton Exchange custom, not pleading contract was made with reference thereto, held demurrable.

Count of complaint for breach of contract in closing out consigned cotton without notice for lack of margin, which probably depended on transactions on New York Cotton Exchange, not alleging that contract was made with reference to such cotton exchange's custom and usage, did not invoke application of judicial notice of custom and usage there prevailing, and was bad on demurrer.

---

⬤➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Accord and satisfaction ⬥25(4)—On plea of general issue in short by consent, defendant may show accord and satisfaction.**

In action for breach of contract in closing out consigned cotton without notice for lack of margin, where plea was general issue in short by consent, defendant had right to show accord and satisfaction.

**6. Accord and satisfaction ⬥10(1)—Compromise and settlement ⬥6(2)—Where claim is not money demand, or, if so, is unliquidated or, if liquidated, there is bona fide dispute or doubt, payment of less sum than actually due may establish accord and satisfaction.**

As general rule, where claim is not money demand or is unliquidated money demand or, if liquidated, there is bona fide dispute as to sum actually due or bona fide doubt or controversy as to whether anything is due, accord and satisfaction may be established through payment of less sum than on actual computation might be found due.

**7. Compromise and settlement ⬥23(3)—Evidence held to show acceptance of check as full settlement of contract; "accord and satisfaction" (Code 1923, §§ 5640, 5642).**

In action for breach of contract in closing out consigned cotton without notice for lack of margin, where plaintiff's claim was unliquidated and there was a dispute as to amount due, evidence held to show that defendant's check was tendered plaintiff with statement of amount due, accepted, money collected and retained as full settlement, constituting accord and satisfaction under Code 1923, §§ 5640, 5642.

**8. Accord and satisfaction ⬥11(3), 20—Compromise and settlement ⬥5(2), 8(4)—That plaintiff protested or was not advised as to legal effect held no ground for avoiding accord and satisfaction (Code 1923, §§ 5640, 5642).**

Under Code 1923, §§ 5640, 5642, relating to accord and satisfaction, fact that plaintiff suing for breach of consignment contract was not advised as to legal effect thereof, he being in no way deceived or misled by defendant, or that he protested as to contract being closed previous to settlement, held no ground for avoiding accord and satisfaction by acceptance of defendant's check as payment in full.

**9. Evidence ⬥472(1), 473—Witness may state judgment as to existence of collective facts, but may not state conclusions as to fact in issue.**

While under collective fact rule witness may state judgment as to existence of collective facts, where his judgment was based on knowledge of all constituent elements, yet he may not usurp functions of jury or court when it passes on facts by stating conclusions as to very fact in issue between parties.

**10. Evidence ⬥472(1)—Permitting testimony whether there was accord and satisfaction held error as permitting witness to state conclusion on very matter in issue.**

In action for breach of consignment contract, in which defendant set up plaintiff's acceptance of his check as settlement in full of claims, overruling defendant's objections to questions asked plaintiff, whether there was agreement to accept check in full settlement and whether defendant owed him difference between market price of cotton in July, was error as permitting witness to state conclusion on very matter in issue.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by J. E. Gibson against J. H. Arnold & Co. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Goodhue & Lusk, of Gadsden, for appellant.

The necessary facts constituting the breach should be set forth with clearness, certainty, and particularity. 13 C. J. 732; Worthington v. Davis, 208 Ala. 600, 94 So. 806; Woodward Iron Co. v. Frazier, 190 Ala. 305, 67 So. 430; Hart v. Bludworth, 49 Ala. 218. A witness may not state his conclusion as to the very fact in issue between the parties. Brandon v. Progress Co., 167 Ala. 365, 52 So. 640; Weller v. Camp, 169 Ala. 275, 52 So. 929, 28 L. R. A. (N. S.) 1106; Long v. Gwin, 202 Ala. 358, 80 So. 440; Miller v. Whittington, 202 Ala. 406, 80 So. 499; Love v. Lee, 199 Ala. 676, 75 So. 24. Custom or usage enters into and becomes a part of a contract made in the light thereof. There was a variance between the contract alleged and the contract on which plaintiff relied for recovery, in that the contract alleged, in view of the custom prevailing, gave defendant the right to close it out on the opening of the market on June 25, and the contract relied on by plaintiff was different in terms, as contended by plaintiff, Arnold allowing him until July 25 to close it. 17 C. J. 461; Waring v. Grady, 49 Ala. 465, 20 Am. Rep. 286; Douglas v. Ham Turp. Co., 210 Ala. 180, 97 So. 650; Guesnard v. L. & N., 76 Ala. 453; U. S. Health, etc., v. Savage, 185 Ala. 232, 64 So. 340. The evidence shows an accord and satisfaction. Hand v. Hall, 147 Ala. 561, 41 So. 78; Brackin v. Owens, 195 Ala. 579, 71 So. 97; Ex parte So. Cot. Oil Co., 207 Ala. 704, 93 So. 662; Brown v. Lowndes, 201 Ala. 437, 78 So. 815; So. Cot. Oil Co. v. Currie, 20 Ala. App. 1, 102 So. 149; Leader v. Vaughan, 20 Ala. App. 545, 103 So. 718; Hertz v. Montgomery, 9 Ala. App. 178, 62 So. 564; West. Ry. Co. v. Foshee, 183 Ala. 182, 62 So. 500; 13 C. J. 564; Knowles v. Gunter, 204 Ala. 411, 85 So. 735; 21 C. J. 1206; Kahn v. Peter, 104 Ala. 523, 16 So. 524; Bruce v. Bibby, 201 Ala. 121, 77 So. 545.

Hood & Murphree, of Gadsden, for appellee.

Counsel discuss the questions raised and treated, but without citing authorities.

BROWN, J. The case was submitted to the jury on the third count of the complaint; the other counts being eliminated by the affirmative charge for the defendant. The

writing declared on, and set out in this count in hæc verba, is in the form of a letter addressed to the plaintiff by the defendant, and indorsed "Accepted" by the plaintiff, in the following words:

"As per your instructions, we have this day transferred your consigned cotton (101) bales, which was based one hundred (100) points off May N. Y. basis middling, to twenty-five (25) points on July N. Y. basis middling. This agreement signed in duplicate this day. Of course it is understood that in case the market declines to where margin is needed on said one hundred and one bales, we reserve the right to close the cotton out unless ample margin is furnished."

The breach alleged is that the defendant on the 24th day of June, 1924, "closed out his (plaintiff's) contract in reference to said cotton, without his consent or agreement, at the then market price of 28.19 cents per pound, to his damage," in that during the month of July cotton advanced to the price of 35 cents per pound and plaintiff lost the right to have the cotton sold at the advanced price.

[1] The words "your consigned cotton" as used in the writing, in the absence of explanation, imports that the cotton was delivered to the defendant for care or sale, the title to remain in the consignor until it was disposed of, or held at his will, until the market declined and the plaintiff failed to advance needed margins. 12 C. J. p. 525; 1 Words and Phrases, Second Series page 906.

[2] It appears from the face of this writing and the averments of the count that there had been some previous dealings between the parties with respect to this particular cotton, not disclosed in the paper pleaded as the contract between the parties, and the writing is clothed in such language as to render its terms obscure and ambiguous. In such cases, in the absence of general custom or usage in relation to such transactions, of which the courts may take judicial notice, it is incumbent on the pleader to plead the facts, if such there be, as will remove the ambiguity and render the contract certain so that the court may judge of the right of the parties, and, in the absence of such averments, evidence explanatory of the writing is not admissible, and the contract will be held void. Elmore, Quillian & Co. v. Parrish Bros., 170 Ala. 499, 54 So. 203; 27 R. C. L. 195, § 40.

[3, 4] The courts take judicial notice that the New York Cotton Exchange is operated under the general supervision of the United States Department of Agriculture, under the provisions of the federal statute known as the "Cotton Futures Act" (U. S. Stat. at Large, vol. 39, part 1, p. 479; U. S. Comp. St. §§ 6309e, 6309i). Maxwell Planting Co. v. A. P. Loveman & Co., 212 Ala. 288, 102 So. 45. And it may be that the courts would take judicial notice of the custom and usage there prevailing in respect to contracts made with reference to such custom and usage, but the rules of good pleading require that appropriate averments showing that the contract pleaded was so made is essential to invoke the application of such judicial notice. We are therefore of opinion that the court was in error in overruling the demurrers to the third count of the complaint.

[5] The plea was the general issue, in short by consent, and, under the issues thus formed, it was the defendant's right to show accord and satisfaction, and he now insists that this was shown by the undisputed evidence, and that he was entitled to the affirmative charge.

The undisputed evidence shows that, under the original consignment of the cotton to the defendant, plaintiff had received from the defendant an advance equal to 80 per cent. of the then market price on the entire lot of cotton consigned, and on the decline of the market had advanced to the defendant margins, so that at no time did the amount he had retained exceed 80 per cent. of the market value of the cotton. Plaintiff's contention is that, by the contract made between the parties on the 25th of April, 1925, the defendant had engaged to carry the contract through July, giving the plaintiff the right to fix the price at any time during that month on the basis of twenty-five points in advance of the market price of cotton as fixed on the New York Cotton Exchange, and call for a settlement on that basis; that the defendant, without his consent, closed the contract on June 24, 1925, on the basis of 28.19 cents per pound, the market price of cotton of that date, and thereby deprived plaintiff of his right to fix the price of the cotton under the terms of the contract; that the price continued to advance immediately following June 24th, and continued through July until it reached 35 cents per pound.

The defendant's contention is that the consignment was made in accordance with a well-established local custom and usage relating to cotton transactions in that immediate territory, and, under the consignment, construed in the light of this custom and usage, plaintiff's right to fix the price of the cotton was limited to a time prior to the first call day for delivery under July contracts, which was June 25th, and, in the event the plaintiff failed to exercise his right before the call day, it was then defendant's right to close the contract, based on the market price as fixed on the New York Cotton Exchange on the opening of the market on the first call day.

On June 16th the defendant by letter notified the plaintiff that June 25th was the first call day for his contract, and requested that he give defendant instruction before that date, and, the plaintiff failing to give such instruction, the defendant closed the contract.

There is some conflict in the evidence as to whether the contract was closed on the basis of the market of June 24th or June 25th, and

there was evidence tending to show that the price advanced $5 per bale on the 25th.

On the 25th the plaintiff went to the defendant's office and was advised by McCall, defendant's agent in charge, that his contract had been closed. Plaintiff, after making some objection and protest about his contract being closed, states his version of the facts on which defendant bases accord and satisfaction as follows:

"I don't think McCall told me he had fixed the price on that cotton when the market opened. I think he said, 'I had to close you out yesterday.' I don't recollect that he told me he had fixed the price of the cotton on the opening of the market June 25th. He had some figures there. He had a sheet with figures on it. I don't think he showed us that. He said we were out; he had to put us out; he was sorry about it. My recollection is he said he fixed the price on the 24th; that is my understanding. He told me Arnold & Co. owed me $1,-644.77. I made some figures on my claim, figured it a little different from his, and McCall and I went over my and his figures, and I told McCall his figures were correct. He had already drawn a check, and he gave it to me, and he also gave me his statement right here. I don't recollect that he told me to look that statement over. He handed me the statement with the check. I don't recollect that he told me if it was not all right to let him know. I told him my figures were a little different than his. I figured the five bales a little difference. I finally told him his figures were correct, and he told me that was what Arnold owed me. I took the check and kept it several days. I put it in the bank, the People's Bank, and got the money on it and never gave it back."

On July 11, 1924, the plaintiff stated in a letter to the defendant the following:

"I am not satisfied with the way I was forced to close my cotton on last Wednesday, for it was difference to your and my agreement, and I feel sure if you had been there I would not of had to of closed it. I submitted to it because I thought then you had a legal right to close me out, but have learned since you did not. So I am asking you to please consider and let me hear from you soon."

The statute, which is merely declaratory of the common law, defines an accord as "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is claiming or entitled," and provides "acceptance * * * of an accord extinguishes the obligation, and is called satisfaction." Code of 1923, §§ 5640, 5642.

[6] The general rule established by the decisions is:

"Where a claim is not a money demand, or, if so, is unliquidated, or if liquidated, there is a bona fide dispute as to the sum actually due, or a bona fide doubt or controversy as to whether anything is due, then an accord and satisfaction may be established and held binding, though there is a payment of a less sum than on actual computation might be found due to the creditor." 1 R. C. L. 194, § 30; Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662; Hand Lbr. Co. v. Hall, 147 Ala. 561, 41 So. 78; Brown v. Lowndes Co., 201 Ala. 437, 78 So. 815.

[7] In this case the undisputed evidence shows that the claim of the plaintiff was unliquidated, and the parties were not in agreement as to the exact basis on which the amount thereof should be computed, yet they finally agreed on the basis of settlement, and the defendant tendered his check with the statement of the amount due, which the plaintiff accepted and collected and retained the money. That it was tendered in full settlement, and that the plaintiff so accepted at the time, is clear from his own evidence and his letter of date of July 7, 1924.

[8] And the fact that he was not advised as to the legal effect of his contract—about which there is a bona fide dispute—being in no way deceived or misled by the defendant, or that he protested as to his contract being closed previous to the settlement, affords no basis for avoiding the accord and satisfaction so tendered and accepted. Ex parte Southern Cotton Oil Co., supra; 1 R. C. L. 194, § 30. We are therefore of the opinion that the defendant was entitled to the affirmative charge, which was erroneously refused.

[9] While under the "collective fact" rule, "a witness may state his judgment as to the existence vel non of facts where the facts stated were collective facts and the judgment of them was based upon knowledge of all the constituent elements," yet the witness may not usurp the functions of the jury—"or the court, when it passes on the facts—by stating his conclusion as to the very fact in issue between the parties." Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640.

[10] The questions to the plaintiff, "Was there any agreement to accept the check in full settlement?" "And he owes you the difference between the market price of cotton in July?" and others, were subject to the defendant's objection which invoked this rule, and the court committed error in overruling such objection. We deem it unnecessary to consider other questions. For the errors pointed out, the judgment of the circuit court is reversed.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.