186 So. 727

**ROBERSON v. TENNESSEE VALLEY AUTHORITY.**

**8 Div. 925.**

Supreme Court of Alabama.

Feb. 16, 1939.

Wm. L. Chenault, of Russellville, for appellant.

James Lawrence Fly, Wm. C. Fitts, Jr., and Conrad M. Kennedy, all of Knoxville, Tenn., for appellee.

GARDNER, Justice.

Plaintiff, Roberson, upon the basis of competitive bids solicited by defendant, Tennessee Valley Authority, was awarded the contract for loading, unloading and hauling materials in accordance with attached specifications as to wage scale and conditions.

Item number three (here in dispute), for which bids were solicited, called for bids as follows: "unit (ton mile) price for loading, hauling and unloading material and equipment to and from points in the 'Wheeler area,' to be designated by the Authority as requirements develop."

Plaintiff, in response to this invitation, submitted his bid upon the basis of the ton mile as a unit of fourteen cents for the first mile and seven cents for each additional mile. His bid was accepted and a written contract duly executed.

The following provisions of the contract are here pertinent:

"Section 2. The services consist of hauling by motor vehicle, loading, unloading and delivering lumber, sand, cement, stone, reinforcing steel, and miscellaneous materials, supplies, and construction equipment to and from points in the 'Wheeler area' as designated and directed by the Authority as its requirements develop."

"Section 7. The Authority will pay, and the contractor will accept, as full compensation for the performance of all his obligations hereunder as follows * * * for loading, hauling, and unloading material and equipment to and from points in the 'Wheeler area' to be designated by Authority per unit of one ton, 14¢ for the first mile, 7¢ for each additional mile."

In this last noted section is the further provision that "payments will be based on

measurements of distance and computations of weight made by the Authority, which shall be conclusive, and will be made as soon after the first and fifteenth days of each month as vouchers can be prepared by the Authority or properly certified invoices covering services performed up to and including the fifteenth and last days of each preceding month, respectively. No extra or additional compensation will be allowed for the condition of the materials or the roads or any other reason." And in section 8, it was provided the contract could be terminated at any time by the Authority upon ten days' written notice to the contractor, and by the contractor on thirty days' written notice to the Authority.

Under the terms of the contract the invitation for bids, the contractor's bid, and the conditions of bid, all attached to the contract, were made a part thereof. The conditions of bid (made a part of the contract) in the nineteenth paragraph contain the following stipulations:

"All payments shall be made on railroad scale weights except as noted below.

"When shipments do not come by rail, and therefore there is no railroad scale weight, payments shall be made on actual weights of the material hauled. It shall be the contractor's responsibility to secure duplicate copies of these weight slips.

"Sand and gravel, when shipments are not made by rail, shall be measured on struck measurements of the truck, as determined by the Authority's engineers. A cubic foot of sand shall be considered as weighing ninety-six (96) pounds per cubic foot and a cubic foot of gravel shall be considered as weighing one hundred two (102) pounds per cubic foot.

"Payments on cement shall be made on the basis of ninety-four (94) pounds per bag.

"Under Item No. 3, payments shall be made on the basis of actual weight carried and actual miles hauled. The trucks shall be equipped with accurate odometers, which may be checked at any time by the Authority's engineers. Certificates showing actual miles covered on each such trip shall be supplied. These certificates shall show number of miles traveled, point of origin, material hauled, and weight of material."

The twelfth paragraph of these conditions reads:

"Claims and protests.—If the contractor takes exceptions to any ruling or measurements of the Authority, he shall, within ten days thereafter, file a formal written protest with the said Authority, or be considered as having waived all future claims on account of the ruling or measurement excepted to."

On the basis of this contract plaintiff instituted this suit, claiming underpayment for the hauling done. Confessedly, however, he had been paid in full for the actual distances the loads were hauled under the contract. Plaintiff submitted invoices which set out the amount due him each semi-monthly period throughout the entire period of the contract, and it is admitted the defendant Authority had paid plaintiff in full on the basis of these invoices submitted. Each invoice stated, "we certify that the above invoice is correct," and bore plaintiff's signature. Plaintiff's claim of underpayment is two-fold: first, he insists defendant's construction of the contract as to hauling distance is incorrect, in that, in addition to payment for actual distances hauled, he should receive payment for the difference between a fraction of a mile and a whole mile. For instance, his insistence is that if he hauled a load a distance of two and one-tenths miles he should be paid as if he had hauled three miles, rather than the fractional mile, as contended by defendant, and upon which basis of actual mileage payments have been made. And the second contention as to underpayment is that an employee of defendant told plaintiff payment would not be made for loads hauled unless he could produce a weight ticket, and that he traveled a greater distance to the scales for that purpose, and in addition had to pay the twenty-five cents weighing fee.

As to the question of haulage distance, that is, that any fraction of a mile should be construed as a whole mile, plaintiff stated his contention to some one of the employees and a ruling was obtained in September 1935 by way of letter to the effect the Authority stood upon the contract as written, and theretofore acted upon by the parties (payments having been made on the actual mileage basis), and that if plaintiff was not satisfied with the contract as written he might avail himself of the privilege of cancellation provided therein. But plaintiff did not avail himself of the privilege of cancellation. He continued to haul until the job was completed. He had also

complained to some of the employees in regard to the trips to weigh and weighing fees, but to no avail. Speaking to this matter plaintiff testified: "When I received that letter telling me definitely and in writing that the TVA was going to stick to its interpretation of the contract about which I was complaining and telling me if it was not acceptable I could terminate the contract and quit right then under the provision of the contract I never did anything because I was satisfied with the contract as I construed it. I was relying on the words of 'the contract. I kept on submitting those invoices twice a month and accepted payment on the basis of these invoices. That same contract that gave me the right to cancel also gave the TVA the right to cancel on ten days notice."

It is to be recalled that the contract expressly stipulated (section 12 of the conditions, supra) that if the contractor excepts to any rulings or measurements of the Authority, he shall, within ten days thereafter, file a formal written protest with the Authority, and failing therein will be considered as having waived all future claims on account of the excepted to ruling or measurement. There is no pretense that any such protest was filed. Plaintiff testified in this regard: "Each of those invoices were paid by checks issued to me by the TVA. These checks were drawn on the Treasury of the United States, and were received and cashed by me. I never delivered any written notice to the TVA telling them the checks were not enough and did not cover all of my claims at the time I received them." Nor is there any pretense of a waiver of this feature of the contract. And it is clear enough there is nothing to indicate fraud or bad faith on defendant's part.

◼ Notwithstanding defendant's positive denial of plaintiff's contention, and the continued payments on the basis of defendant's interpretation of the contract, plaintiff continued for many months, until the job was completed, to haul, and collected all the money, amounting to many thousand dollars. The provision of the contract for filing written protest was wholly ignored. It was a reasonable stipulation of the contract, and we find no suggestion as to why it should not be here enforced. The reasonableness of this provision, and indeed the wisdom of its insertion in the contract, is illustrated by the facts here presented. The Authority had the right to cancel the contract on only ten days' notice.

Plaintiff's contention as to the haulage distance had been expressly repudiated, and plaintiff continued to haul and receive payment on invoices certified to by him to be correct, and thus indicating entire acquiescence in defendant's interpretation.

As to the matter of weight tickets, plaintiff's foreman presents a lengthy computation made by him of the number of miles which the various truck drivers had hauled trucks and loads to and from various public scales, which computation he states had been made from ledger books kept on the job, and the distances entered after each haul. The book was lost and of consequence could not be produced, and the truck drivers made no memoranda as to the distances. The Authority had, therefore, no opportunity whatever to check the various claims and determine their correctness. The written protest would have given it this opportunity, and doubtless would likewise have led to the conclusion that a cancellation of the contract was advisable.

◼ A stipulation of similar character was considered in Abercrombie & Williams v. Vandiver, 126 Ala. 513, 28 So. 491, 493, wherein it was provided that "no claim for extra work will be considered except it be made in writing to the resident engineer within one month after said work has been done." Speaking of this provision, the Court said: "The making of the claim in the manner stipulated, was a condition precedent to the right of plaintiffs to claim compensation, and as there is nothing in such a condition offensive to public policy, it only remains for the courts to give it force and effect." This language is equally applicable here.

◼ There is nothing in the stipulation here offensive to public policy, and indeed, we think this case demonstrates its entire reasonableness. It is equally as reasonable as the requirement of the policy contract in Equitable Life Assur. Society v. Foster, 230 Ala. 209, 160 So. 117, and that considered in Harris v. Western Union Telegraph Co., 121 Ala. 519, 25 So. 910, 77 Am. St.Rep. 70. As observed by the court in Chapman Decorative Co. v. Security Mutual Life Ins. Co., 3 Cir., 149 F. 189, 191, and applicable here, "no reason is now shown why this clause of the contract should not 'be enforced. The parties made such an agreement, and thereby made it a law for themselves."

Under the undisputed proof, therefore, we conclude plaintiff was not entitled to recover, and this affirmative defense being thus undisputedly established, all other questions presented by appellant may be pretermitted, for if any error intervened in regard to any of them (which we by no means intend to indicate) they are rendered innocuous. Britt v. Daniel, 230 Ala. 79, 159 So. 684; McBurney v. Central of Georgia Ry. Co., 223 Ala. 390, 136 So. 796; Alabama Red Cedar Co. v. Tennessee Valley Bank, 200 Ala. 622, 76 So. 980; Scoggins v. Atlantic & Gulf Port Co., 179 Ala. 213, 60 So. 175.

Defendant also insists that the matter of the dispute between the parties, the continued presentation of invoices as correct, and the receipt by plaintiff of the sums due thereon to the time of the completion of the job, supported likewise the defense of accord and satisfaction, citing Hand Lumber Co. v. Hall, 147 Ala. 561, 41 So. 78; Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662; Arnold & Co. v. Gibson, 216 Ala. 314, 113 So. 25, and South Carolina Cotton Growers' Corp. v. Weil, 220 Ala. 568, 126 So. 637.

But, as the foregoing considerations are determinative of the case, we need enter into no discussion of that question, which is left to one side.

The authorities relied upon by plaintiff (among them, Davis v. Badders, 95 Ala. 348, 10 So. 422; Henderson-Boyd Lumber Co. v. Cook, 149 Ala. 226, 42 So. 838; Alabama Trunk & Luggage Co. v. Hauer, 214 Ala. 473, 108 So. 339; Dunaway v. Roden, 14 Ala.App. 501, 71 So. 70; Catanzano v. Jackson, 198 Ala. 302, 73 So. 510; Oliver v. Camp, 9 Ala.App. 232, 62 So. 469; Hutchison v. Cullum, 23 Ala. 622) have been examined, and found to deal in large part with contracts modified by mutual consent of the parties, and with work and labor done and accepted. They are inapplicable to the facts of this case, and do not in any manner militate against the conclusion we have reached.

We are of the opinion, therefore, that no prejudicial error has intervened, and that the affirmative charge was correctly given for defendant.

It results that the judgment is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.