COOK, Justice.
Alfa Mutual Insurance Company (“Alfa”) and John Hall appeal from a judgment in favor of Nationwide Mutual Insurance Company (“Nationwide”), as subrogee of Fried-lander Realty, Inc. (“Friedlander”). As to Alfa, we reverse the judgment of the trial court and enter a judgment for Alfa; as to Hall, we reverse the judgment and remand.
These appeals are from a judgment entered following this Court’s remand of this action in Nationwide Mutual Insurance Co. v. Hall, 643 So.2d 551 (Ala.1994) (‘‘Nationwide I ”). Because the issues in this appeal turn on the interpretation to be accorded our holdings in that case, we shall discuss that case at length, and, for the convenience of the reader, we set forth the factual and procedural background of this dispute as stated in Nationwide I:
“Both the plaintiff Nationwide ... and the defendants John Hall ... and Alfa ... appeal from a ... summary judgment in favor of Nationwide. This ease arose out of a personal injury and wrongful death action brought as a result of a fire in an apartment building owned by Hall and managed by Friedlander, in which a tenant was killed and her infant child was injured. ...
“Hall owns an apartment building in Mobile. In May 1986 Hall entered into a management agreement with Friedlander. Included in this management agreement was this indemnity provision:
“ ‘Owner agrees to save agent harmless from all damage suits and claims arising in connection with said property and from all liability for injuries to persons or property while in, on, or about the premises. Owner agrees to carry, at his own expense, appropriate amounts of public liability insurance and such other liability insurance as may be reasonably applicable to this property [;] said policies shall be so endorsed as to protect agent in the same manner and to the same extent as owner. If these policies or endorsements are not furnished to agent within 10 days after execution of this agreement, coverage may be secured by agent and charged to owner, although agent does not assume this responsibility.’
“Presumably in accordance with this provision of the management agreement, Hall owned a contract of insurance with Alfa, which covered himself, as the named insured, and Friedlander, as ‘Any person ... acting as [Hall’s] real estate manager.’ The Alfa policy also covered Hall against all claims made against him on the basis of the indemnity agreement with Friedlan-■der. Friedlander was covered under a policy of its own issued by Nationwide.
“On April 14, 1987, a fire in the apartment building owned by Hall and managed by Friedlander caused the death of a tenant named Sheila Harris and severe in *1297 juries to her minor daughter Courtney Sedeidra Harris. As administratrix of the estate of Sheila Harris and as guardian and next friend of Courtney Sedeidra Harris, Ella Mae Packer brought a wrongful death and personal injury action against Hall and Friedlander. On September 28, 1988, Friedlander sent a letter to Hall and Alfa, requesting that they provide it with a defense and indemnify. Alfa received this letter on September 29,1988. Neither Hall nor Alfa answered this letter. Between September 28, 1988, and October 18, 1988, Friedlander made several additional, oral requests that Hall and Alfa defend and indemnify in regard to the claims alleged in the Packer action. Neither Hall nor Alfa responded to these requests. On October 18, 1988, Friedlander sent Hall and Alfa a second written request for a defense and indemnification. Again neither responded.
“In accordance with its policy, Nationwide provided Friedlander with a defense, and on July 31, 1989, Nationwide entered into an agreement with Packer settling the claims against Friedlander for $250,000. The circuit court judge later approved the settlement in a prochein ami hearing, and the settlement agreement was subsequently consummated. To defend Friedlander in the Packer action, Nationwide paid $48,-123 in attorney fees and $7,621 in other expenses.
“Hall never responded to any of Fried-lander’s requests for indemnity under the management agreement. The evidence indicates that Alfa did not determine that Friedlander was covered under the Hall policy until August 21, 1989, and did not advise Friedlander that it was covered until November 28, 1989. After the settlement agreement between Packer and Friedlander was consummated on January 12, 1990, Alfa also entered into an agreement with Packer on behalf of Hall, settling the claims against Hall for $800,000, the limit of coverage under the Alfa policy.
“On October 22, 1991, as subrogee of Friedlander, Nationwide brought this action against Hall and Alfa, seeking the amount it paid to settle the claims against Friedlander and the attorney fees and other expenses it paid to defend Friedlander. In its complaint, Nationwide alleged that Hall breached the indemnity provision of the management agreement. Nationwide also alleged that Alfa breached its contract of insurance with Friedlander, that Alfa negligently failed to settle the claims against Friedlander, that it wantonly failed to defend and indemnify Friedlander, and that it acted in bad faith by. failing to investigate Friedlánder’s claim of coverage and by failing to provide Friedlander with coverage or a defense. In their answer, Hall and Alfa denied most of Nationwide’s allegations and pleaded, as affirmative defenses, that Nationwide had failed to state a claim and that it had no standing as a subrogee of Friedlander to prosecute the breach-of-eontract claim against Hall and the negligence, wantonness, and bad faith claims against Alfa.
“Nationwide moved for a summary judgment against Hall and for a partial summary judgment against Alfa. After the parties submitted sundry items of deposition, affidavit, and documentary evidence, the circuit court entered a summary judgment in favor of Nationwide on its breach-of-contract claim against Alfa. In a thorough, written judgment, the circuit court held that the Alfa and Nationwide policies both provided Friedlander with primary insurance coverage and that Alfa was obligated under its policy to contribute a pro rata share of the $250,000 paid to settle the claims against Friedlander and a pro rata share of the prejudgment interest thereon and to pay one-half of the attorney fees and other expenses paid by Nationwide to defend Friedlander and one-half of the prejudgment interest on these fees and costs. The circuit court calculated Alfa’s pro rata share of the settlement and the prejudgment interest thereon based on the proportion that the limit of coverage of the Alfa policy bore to the total limit of insurance coverage applicable to the loss suffered by Friedlander. Thus, the circuit court concluded that because the $300,000 limit of coverage on the Alfa policy was 23% of the $1,300,000 total amount of insurance coverage applicable to the loss, *1298 Alfa was obligated to pay $57,500 of the $250,000 settlement and $10,925 of the $47,500 in prejudgment interest thereon. The circuit court also calculated that Alfa was obligated to pay $27,571 (one-half of the $55,143 in attorney fees and other expenses) and $5,735 (one-half of the $11,470 in prejudgment interest thereon).
“The circuit court also entered ex mero motu a summary judgment in favor of Hall on Nationwide’s breaeh-of-contract claim, holding that the indemnity provision of the management agreement was unenforceable because it did not contain unambiguous language evincing an intent to indemnify Friedlander for the consequences of its own negligence.”
643 So.2d at 553-57 (emphasis added; footnote omitted).
This Court affirmed the judgment against Alfa, concluding that Nationwide and Alfa were co-providers of “primary insurance coverage of the same insurable interest, subject matter, and risk,” and, consequently, that “they share[d] liability in accordance with the proportion that the limits of each policy [bore] to the total limit of insurance applicable to the loss.” 643 So.2d at 561. We held, therefore, that, notwithstanding its $300,000 payment to Packer — the liability limit under its policy with Hall — Alia was further hable to Nationwide for its pro rata share of the $250,000 Nationwide paid to settle Packer’s claims against Friedlander, because, we explained, Alfa had paid its policy limits with full knowledge that Friedlander was also seeking indemnification. 643 So.2d at 562. As to the judgment in favor of Hall, however, “we [held] that the circuit court erred in holding that the indemnity provision of the Friedlander management agreement was unenforceable.” Id. at 557. On October 17, 1994, Alfa tendered to the Mobile County Circuit Court clerk a cheek in the amount of $119,417.85, which represented the amount of the judgment affirmed in Nationwide I plus interest.
On remand of this cause, Nationwide moved, on July 19, 1994, for a summary judgment against Hall, contending that it was entitled, as a matter of law, to recover from Hall $279,873.02 plus pre-judgment interest. That figure included $192,500, which represented the balance of the $250,000 Nationwide had paid in settlement that remained above the $57,500 we ordered Alfa to pay in contribution. Id. at 555 and 563. It also included an amount representing the second half of Nationwide’s attorney fees and defense expenses, the first one-half of which we ordered Alfa to pay in contribution. Id. Hall opposed the motion, contending that the management agreement was ambiguous as to whether Friedlander was to be indemnified from Hall’s personal assets; that when he executed the management agreement, he did not intend to indemnify Friedlander beyond the extent of the coverage he purchased from Alfa; and that he was entitled to a jury trial on the issue of the parties’ intent.
On January 17, 1995, the trial court entered a summary judgment, stating in part: “Nationwide is entitled to a judgment against Hall in the amount of $286,092.30. See Nationwide at 557.” However, it further held: “Alfa is obligated to indemnify Hall because its contractual liability coverage covers plaintiffs claims, Nationwide at 553, and it expended its limits with full knowledge of Friedlander’s claim against Hall for indemnity. See Nationwide.” (Emphasis added; citations omitted.) Citing Ala.Code 1975, § 27-23-2, the trial court then ordered Alfa to “pay the judgment entered against Hall in the amount of $286,092.30.” Both Alfa and Hall appeal from this judgment. In order to facilitate a logical presentation of the issues, we will address Hall’s appeal first.
I. Case Number 194-0756 — Hall’s Appeal
Hall contends that the trial court erred in holding him liable as a matter of law for the amount Nationwide paid in settlement plus expenses and interest that remained after the contribution that we ordered from Alfa in Nationwide I. He contends that the trial court misinterpreted our holding in Nationwide I as it concerned his liability under the management agreement.
Nationwide contends that the holding in Nationwide I as to Hall’s liability under the management agreement mandates the summary judgment entered against Hall. In support of this contention, it quotes the following portion of our discussion in Nationwide I:
*1299 “[W]e conclude that Friedlander and Hall expressed in clear and unambiguous language an intention that Hall would indemnify Friedlander for all liability for damages arising from property damage in connection with the management of the apartment building and for all liability for personal injury suffered on the premises of the apartments.”
643 So.2d at 557 (emphasis in original). This statement, Nationwide contends, indicates that Nationwide I held Hall to be liable, personally and individually, to indemnify Friedlander folly for the amount it paid to settle Packer’s claims against it, which holding, it contends, is the law of this case.
We disagree with Nationwide’s contentions. On its face and considered alone, this statement might suggest that we had, in fact, determined all aspects of Hall’s liability under the management agreement. That suggestion must be rejected, however, because we did not intend by that statement to blur the distinction between the species of claim to be indemnified and the extent of personal liability for, or mode of satisfaction of, that claim — a distinction that is crucial to this ease.
The only issue presented in Nationwide I by the trial court’s ex mero motu disposition of Nationwide’s breach-of-eontract claim involved the species of liability arising under the management agreement. That issue was presented in the context of the rule adopted in Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala.1980), stated in Brown Mechanical Contractors, Inc. v. Centennial Insurance Co., 431 So.2d 932 (Ala.1983), as follows:
“[Indemnification for one’s own negligence is available only where ‘the parties knowingly, even-handedly, and for valid consideration intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee’s own wrongs, if expressed in clear and unequivocal language,’ (emphasis added [in Brown]), 388 So.2d at 176.”
431 So.2d at 945 (first emphasis added). Thus, the narrow issue in Nationwide I relating to Hall was whether the provision in the management agreement under which Hall agreed to indemnify Friedlander “from all damage suits and claims arising in connection with [the] property and from all liability for injuries to persons or property while in, on, or about the premises,” evidenced “elear[ly] and unequivocally],” Industrial Tile, 388 So.2d at 176, an intent on Hall’s part to include indemnity for-claims arising from Friedlander’s own negligence, although the management agreement contained no “language specifically referring to the negligence of [Friedlander].” Nationwide I, 643 So.2d at 556 (emphasis added).
In concluding that it expressed that intent sufficiently to satisfy the rule, we answered the narrow question as to what was to be indemnified, namely, claims based on Fried-lander’s negligence. But we did not consider, address, or decide whether the management agreement was clear and unambiguous in every other respect. In particular, we did not consider whether the management agreement was ambiguous as to how Friedlander was to be indemnified, that is, whether he was to be indemnified solely through liability coverage, as Hall construes it, or through a combination of insurance and HaU’s personal assets, as the trial court held. That question is a separate one and is the one we now address.
As to the manner in which Friedlander was to be indemnified, the management agreement — which was drafted by Friedlan-der — provided:
“[Hall] agrees to carry, at his own expense, appropriate amounts of public liability insurance and such other liability insurance as may be reasonably applicable to this property[;] said policies shall be so endorsed as to protect [Friedlander] in the same manner and to the same extent as [Hall]. If these policies or endorsements are not furnished to [Friedlander] within 10 days after execution of this agreement, coverage may be secured by [Friedlander] and charged to [Hall], although [Friedlan-der] does not assume this responsibility.”
(Emphasis added.)
The management agreement, including this provision in particular, is ambiguous if it “is reasonably susceptible [of] more than one *1300 meaning.” Files v. Variety Wholesalers, Inc., 554 So .2d 1068,1069 (Ala.Civ.App.1989). Indeed, “[t]he writing is «/«.ambiguous if only one reasonable meaning clearly emerges.” Id. (Emphasis added.)
The agreement we have here is not an unambiguous writing. The first provision emphasized above requires Hall to purchase insurance in an amount sufficient to protect him and Friedlander equally. Arguably, at least, Hall and Friedlander would not be protected equally if, as Nationwide contends, Hall may be required to indemnify Friedlan-der from his personal assets. They would be protected equally only if Hall carried liability insurance in an amount sufficient to reimburse Friedlander fully for any claims against him.
The second provision emphasized above further supports this construction. Pursuant to that provision, Friedlander could purchase — at Hall’s expense — any amount of insurance it deemed necessary to ensure that it would be indemnified fully from claims against it. The logic of this latter provision loses much of its force under the position advanced by Nationwide.
Nationwide, moreover, has essentially conceded the ambiguity of this provision. Specifically, at page 7 of the “Appellant’s Response to Application for Rehearing” filed in this Court following its opinion in Nationwide I, Nationwide stated:
“Justice Houston, in dissent, raises the issue of whether the indemnity provision is ambiguous because, in addition to the hold harmless language, it also required Hall to carry liability insurance, thus raising an inference that Hall’s liability may be limited to the ‘appropriate amounts of public liability insurance’ that he was required to carry ‘to protect agent [Friedlander] in the same manner and to the same extent as owner [Hall].’ While this concern is valid, it is premature. This Court’s original opinion, remanding the case to the trial court for further proceedings consistent with the opinion, will give the trial court and the parties a chance to resolve that issue, which had not arisen under the trial court’s previous ruling. It may well develop, either by agreement or ruling of the trial court, that Hall will not face personal liability in excess of that covered by his Alfa policy.”
(Emphasis added.) For these reasons, we cannot say that Hall’s interpretation of the management agreement, although not the only one possible, is unreasonable, and, consequently, we cannot say that the management agreement is un ambiguous in this respect.
Having concluded, as it is within our province to do, Dill v. Blakeney, 568 So.2d 774, 778 (Ala.1990), that the management agreement is ambiguous, we note that “its meaning may be clarified by parol evidence of facts and circumstances aliunde and in pais.” Foster & Creighton Co. v. Box, 259 Ala. 474, 478, 66 So.2d 746, 750 (1953). In a case such as this one, and “[w]hen ... there is such evidence^] it becomes the province of the jury to ascertain the truth of the evidence and draw inferences from [it], and then on proper instructions interpret the contract in the light of the facts established by the evidence.” Id.
In opposition to Nationwide’s summary judgment motion, Hall presented an affidavit, stating in pertinent part:
“At the time of this incident I was insured under a policy of insurance issued by [Alfa].... My insurance company, [Alfa], paid $300,000.00 to the Plaintiffs in the lawsuit entitled Packer v. Friedlander Realty, Inc., CV-88-2276 in the Circuit Court of Mobile County, Alabama, to settle this matter. It is my understanding that the Supreme Court of Alabama has now required [Alfa] to pay an additional sum to [Nationwide] because [Friedlander] was an insured under the Nationwide policies and the Alfa policy. I enclose a complete copy of the [Nationwide] insurance policy and the exeess liability insurance policy of Nationwide issued to [Friedlander]. These two policies provide $1,000,000.00 each in liability coverage_ These were the policies that were produced by Nationwide in a Federal Court declaratory judgment action between Nationwide and Friedlander, to which neither I nor [Alfa] was a party. That case was filed in the United States District Court for the Southern District of *1301 Alabama, Southern Division, and was Civil Action No. 89-0190-B.
“When I signed the management contract with [Friedlander], I met with Robert Keith of Friedlander, Inc. I provided the name of my insurance agent on the management agreement. There was not much discussion about the contract. I read the contract and the portion concerning indemnity. ... It was my understanding from reading the contract that if my policy or the limits of that policy were not appropriate in amount to completely cover the indemnity clause in the management agreement, then [Friedlander] could obtain its own insurance coverage and I would be charged for the premium. It was never my understanding from my discussions with Robert Keith, and my reading of this contract, that I would be exposed to an open-ended indemnity agreement regardless of the amount of insurance available to me under [Alfa’s] policy and notwithstanding the total amount of insurance available to [Friedlander].”
In summary, the trial court was not bound by Nationwide I, as it apparently thought itself to be, to hold that the management agreement unambiguously required Hall to indemnify Friedlander from his personal assets for the amount of the claim exceeding the policy limits. On the contrary, the ambiguity of the provisions as to whether Fried-lander was to be indemnified from .Hall’s personal assets, coupled with the extraneous evidence produced, precluded a summary judgment for Nationwide. Cf. J. Paul Jones Hosp. v. Jackson, Coker & Assocs., 491 So.2d 972 (Ala.Civ.App.1986) (“Ambiguity in the contract precludes ... summary judgment”). Consequently, as to Hall, the summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
II. Case Number 1940678 — Alfa’s Appeal
Nationwide concedes that the trial court’s judgment requires Alfa “ultimately [to] pay Nationwide twice.” Brief of Appel-lee, at 26. It justifies this result on the ground that Alfa’s “obligations,” Nationwide argues, “are based upon two different [theories of recovery].” Id. The first theory is, of course, the one under which it recovered in Nationwide I, based on Alfa’s status as a co-provider of “primary insurance coverage of the same insurable interest, subject matter, and risk.” 643 So.2d at 561.
Nationwide’s second theory of recovery from Alfa is based on its construction of Ala.Code 1975, § 27-23-2,[1] under which, Nationwide contends, it became a “judgment creditor” of Alfa because of the judgment entered against Hall. Under this theory, Nationwide seeks to recover now the same amount it sought unsuccessfully to recover in the proceedings before our remand in Nationwide I. Recovery under this theory would require Alfa, which, because of its settlement with Packer and the judgment in Nationwide I, has already paid over $420,000 on a policy that contained a $300,000 limitation of liability, to pay an additional $286,092.30.
In opposition to this theory, Alfa argues (1) that § 27-23-2 does not apply to the parties in this case and (2) that a second recovery is foreclosed by this Court’s holding in Nationwide I, which, Alfa contends, conclusively determined the extent of Alfa’s liability for contribution to Nationwide. We need not address the applicability of § 27-23-2, because we hold that the judgment against Alfa contravenes the holding in Nationwide I, which is now the law of this ease.
In Nationwide I, after concluding that the Alfa and Nationwide policies provided primary coverage and that Alfa had settled with Packer at its own risk, we said:
*1302 “We hold, therefore, that because the record undisputedly shows that Alfa knew of Friedlander’s claim for indemnification long before it paid the entire proceeds of its policy to settle the claims against Hall, the circuit court properly held Alfa liable to Friedlander’s other insurer, Nationwide, for a pro rata contribution to the amount Nationwide paid to settle the claims against Friedlander and the cost of conducting Friedlander’s defense, even though Alfa had already paid the limits of the policy covering both Hall and Friedlan-der in settlement of the claims against Hall.”
643 So.2d at 562 (emphasis added). We agree with Alfa that Nationwide I squarely held that, because “Nationwide provided primary coverage for Friedlander,” it “should share the settlement costs and expenses.” Reply Brief of Appellant Alfa Mutual Insurance Company, at 5 (emphasis added). Otherwise stated, Nationwide I held that Alfa and Nationwide must share the cost of the very expense for which Nationwide now seeks full reimbursement.
“It is well established that on remand the issues decided by an appellate court become the ‘law of the case,’ and that the trial court must comply with the appellate court’s mandate.” Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989); Stewart v. ATEC Associates, Inc., 652 So.2d 270, 273 (Ala.Civ.App.1994). See also Walker v. Carolina Mills Lumber Co., 441 So.2d 980 (Ala.Civ.App.1983).
The law of this case, as established in Nationwide I, prohibits a second recovery by Nationwide from Alfa under any theory. This is true regardless of the eventual disposition of the action against Hall. We agree with Alfa’s argument that to hold otherwise would essentially “render meaningless the decision of the Court in the first appeal.” Reply Brief of Appellant Alfa Mutual Insurance Company, at 5. The summary judgment is, therefore, reversed as to Alfa, and a judgment is rendered in favor of Alfa.
1940678 — REVERSED AND JUDGMENT RENDERED.
1940756 — REVERSED AND REMANDED.
HOOPER, C. J., and ALMON, SHORES, HOUSTON, KENNEDY, and BUTTS, JJ., concur.

. Section 27-23-2 provides:
“Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury, or death or for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment."