**EMPLOYERS' MUTUAL CASUALTY INSURANCE COMPANY,**
Plaintiff,

v.

**Norma HUGHES, et al., Defendants.**

**Case No. 4:10–cv–2407–TMP.**

United States District Court,
N.D. Alabama,
Middle Division.

April 22, 2011.

Sue E. Williamson, Klasing & Williamson PC, Birmingham, AL, for Plaintiff.

Kelly D. Simpkins, Roy H. Liddell, Wells Marble & Hurst, PLLC, Ridgeland, MS, for Defendants Bank of America Home Loan Servicing and Balboa Insurance Company.

Stephen P. Bussman, Attorney at Law PC, Fort Payne, AL, for Defendant Norma Hughes.

## MEMORANDUM OPINION
### and ORDER

T. MICHAEL PUTNAM, United States Magistrate Judge.

This matter is before the court on the motion to dismiss filed October 27, 2010, by defendant Balboa Insurance Company ("Balboa"). The plaintiff, Employers' Mutual Casualty Insurance Company ("EMC") has filed a response to the motion, and Balboa has filed a reply. The parties have consented to the exercise of final dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Accordingly, the court enters this memorandum opinion.

## BACKGROUND

This action arises from a complaint for declaratory judgment filed by plaintiff EMC on September 7, 2010. EMC seeks declaratory relief, requesting that the court declare the parties' rights and liabilities pursuant to a policy of homeowner's insurance issued by EMC to defendant Norma Hughes, which names Bank of America Home Loans Servicing ("BAC") as the mortgagee on a mortgage on Hughes' home. In addition to the homeowner's policy issued by EMC, it is alleged that defendant Balboa also issued to Hughes two other insurance polices, one entitled a "Mortgagor Catastrophe Payment Protection" policy and the other enti-

tled "Home Protection Plan Insurance." Both appear to have been issued at the same time and for the same coverage period, March 1, 2010, to February 28, 2011. It appears that Hughes and Balboa regarded these policies as one insurance contract. Although the policies are based on different form numbers and have separate declaration pages, the declaration page for the "Home Protection Plan Insurance" shows that no premium was charged for it, and both policies bear the same "Policy Number," MRM89587–0598776.[1]

The insurance coverage question arises from a claim apparently filed by Hughes after the total loss of her home and contents in a fire. Plaintiff EMC seeks a declaratory judgment as to any liability it may owe to Hughes or BAC based upon the fire loss, and further seeks a declaration that its coverage for the loss is excluded or reduced because Balboa's policies provide "other insurance," which is primary, thereby limiting EMC's exposure for the loss, even if covered.[2]

The instant action was brought pursuant to 28 U.S.C. § 2201, which provides that a federal court "may declare the rights and other legal relations" of the parties. 28 U.S.C. § 2201(a). In the instant case, it appears that there is no state court proceeding nor any other federal action in which the coverage provided by the EMC contract is at issue. Both the EMC and Balboa policies at issue were attached to the original complaint filed in this action, and therefore can be considered in determining the instant motion to dismiss. Fed.R.Civ.P. 10(c); *see Horsley v. Feldt*, 304 F.3d 1125 (11th Cir.2002); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir.1999). The only count of the complaint in which EMC asserts a claim relating to Balboa is Count Five. While inartfully drawn, that count alleges, *inter alia*, that "EMC's contract obligation to BAC for its interest as a mortgagee is dependent on the coverage provided to Hughes and/or BAC under the Balboa policy." (Doc. 1, p. 12). In response to Balboa's motion to dismiss, EMC clarifies that it seeks a declaration that the Balboa coverage is primary, and that EMC owes no coverage until "after Balboa's coverage is exhausted." (Doc. 16, p. 2). Accordingly, only the narrow issue of whether EMC's coverage is dependent upon the coverage provided by the Balboa policy is raised and addressed here.[3]

## DISCUSSION

■ The two insurance contracts at issue for purposes of the instant motion are a homeowner's policy issued by EMC and a "Mortgagor Catastrophe Payment Protection" policy issued by Balboa. Both policies list Norma Hughes as the insured, and both explicitly refers to BAC as "First Mortgagee" or "Mortgagee." The EMC policy further identifies BAC as having a

---

1. In any event, as explained in the text of this opinion, none of the coverages in the "Home Protection Plan Insurance" is implicated in EMC's claim for declaratory judgment.

2. EMC further alleges that no coverage exists because the fire was intentionally set by Hughes and is thereby excluded; and because Hughes made material misrepresentations and/or concealed material facts from EMC before and after the loss. These coverage questions are not at issue in the instant motion. The only issue raised by the Balboa motion is whether the existence of the Balboa policy precludes or limits any otherwise applicable coverage by EMC.

3. The coverage, if any, owed by Balboa to Hughes or to BAC is not before this court. Neither Balboa nor Hughes or BAC has sought a declaratory judgment with respect to any liability they may have among or between themselves. Resolution of the instant motion also does not determine EMC's obligations under its contract, but simply determines whether the existence of the Balboa policy diminishes or delays any benefits that EMC may be liable to pay to Hughes and/or BAC.

"special interest" in it. The EMC policy is a typical homeowners policy that lists among the covered items Hughes' dwelling, other structures, and personal property. It is an "all perils" policy, subject to exclusions. The policy also provides coverage for loss of use, liability, and medical payments to "others." The policy lists BAC as a party with "an interest in the residence," and it contains a "standard mortgage clause," stating in part that "any loss payment under Coverage A [dwelling] or B [other structures] will be paid to the mortgagee and you [the insured], as interests appear."

By contrast, the Balboa policy is not a standard homeowner's policy. Indeed, on the declaration page, the policy contains the following conspicuous language:

WARNING: THIS POLICY IS NOT A HOMEOWNERS OR FIRE POLICY AND DOES NOT PROVIDE COVERAGE FOR PHYSICAL LOSS OR DAMAGE TO THE COVERED PROPERTY.

(Ex. B to Complaint). Although BAC is named as the mortgagee on the declaration page, the coverages provided included the following:

- Coverage A—Pays Mortgage Payment if Temporarily Uninhabitable
- Coverage B—Pays Incidental Expenses If Temporarily Uninhabitable
- Coverage C—Pays up to Maximum Limit if Permanently Uninhabitable[4]
- Coverage D—Deductible Coverage[5]

Only Coverage A is in issue here, however, because Coverages B and D are paid only to the named insured (i.e., the mortgagee has no insurable risk for incidental expenses or the deductible the homeowner must pay under the EMC homeowner's policy), while Coverage C is expressly excess to any other insurance. Thus, it is only under Coverage A that EMC contends Balboa is the primary carrier with respect to the fire loss claimed by Hughes.

The Balboa policy includes an "other insurance" clause which states:

**Other Insurance**

Coverage A and B—Insurance provided under coverage A and B is primary insurance (with the exception of other mortgage payment insurance) and will not be pro-rated with any other insurance in the event of a loss.

*Id.* at p. 4. EMC points to this language in the Balboa policy as support for its contention that Balboa must first exhaust its Coverage A limits before EMC is required to pay for the fire loss.

Balboa seeks dismissal of Count V of the declaratory judgment complaint on the ground that its policy does not constitute "other insurance"[6] with respect to the casualty coverage provided in the EMC

---

**4.** Although Coverage C pays for the outstanding balance of a mortgage in the event of a permanent loss of covered property, both the declaration page and the "other insurance" section of the Balboa policy explicitly state that this coverage is "excess over any other collectible insurance." EMC cannot, therefore, rely on this coverage to argue that Balboa provides the primary coverage.

**5.** The declaration page on the "Mortgagor Catastrophe Payment Protection" policy list "Deductible Coverage" as one of the coverages of the policy, subject to a $500 limit. Similarly, the declaration on the "Home Pro-

tection Plan Insurance" policy also lists "Deductible Reimbursement," up to a $500 limit, as one of the coverages it provides.

**6.** Balboa also argues that it is not obligated to pay its insured because of the same defenses asserted by EMC: that the insured intentionally caused the loss and made misrepresentations to the insurer. These arguments are misplaced, however, because Balboa has not asserted any cross-claim against Hughes. The only coverage question that is properly before the court as a consequence of the instant motion is EMC's claim for a declaration that it is entitled to contribution from Balboa.

homeowner's policy. Balboa argues that the two policies do not insure the same interest and, therefore, do not constitute double insurance for purposes of invoking the "other insurance" clause. The court agrees.

To implicate the "other insurance" clauses in two or more insurance contracts, there must be "identity of insured interest and identity of risk." 15 COUCH ON INSURANCE 3d., § 219.14. The two policies must insure against the same risk, but also they must provide coverage for the same insurable interest. If two policies insure different things, or insure against different risks, the presence of "other insurance" clauses in the policies does not trigger the coordination of the coverages.

The only Alabama case cited by either party that is relevant to the application of EMC's "other insurance" clause is *Nationwide Mutual Insurance Co. v. Hall*, 643 So.2d 551 (Ala.1994). While EMC points out that the determination of which insurance policy provides primary coverage must be governed by the "exact language" of the policies, the movant fails to recognize the fundamental starting point of the analysis: that any "other insurance" clause applies only where the policies at issue insure the "same interest, subject matter, and risk." *Hall*, 643 So.2d at 560. The Alabama Supreme Court noted that "no issue of whether insurance is primary or excess even arises if double insurance does not exist." 643 So.2d at 560. This case applies the general rule discussed in Couch, above, that "other insurance" clauses are implicated only when the two policies cover the same "interest" and the same "risk."

In this case, the subject matter of the EMC policy is damage to the dwelling and contents of the Hughes home. The interest insured is the homeowner's (and mortgagee's) interest in value of her property,

both intrinsically and as security for the debt owned to the mortgagee. The Balboa policy, however, insures only the homeowner's interest in making her mortgage payment and covering expenses in the event her home becomes temporarily uninhabitable. It does not purport to insure the fair market value of the dwelling. The "interest" insured by Balboa is different from that insured by EMC. While EMC insures the fair market value the dwelling, the Balboa policy insured Hughes against the financial burden of continuing to make her mortgage payment while temporarily unable to inhabit her home.

Additionally, the risk insured against is different. The subject matter of the Balboa policy is more limited, with the obligation being triggered not only by fire or damage, but by uninhabitability. Hypothetically, of course, it would possible for Hughes to suffer a fire loss sufficient to trigger her homeowner's coverage with EMC, but not sufficient to render her home "temporarily uninhabitable" for purposes of triggering the Balboa coverage. The risk encompassed by the EMC policy is far broader than that under the Balboa policy, as is clearly reflected in the coverages provided and the premiums paid. The risk insured against in the EMC homeowner's policy is the risk of loss of the market value of the dwelling, while the risk insured against by the Balboa policy is the risk of the financial burden of continued mortgage payments during a period of time when the dwelling is "temporarily uninhabitable." These are not the same.

The Balboa policy cannot constitute "other insurance" for purposes of EMC's liability because it does not insure the same interest, does not involve the same subject matter, and does not cover the same risk. Consequently, Balboa's policy does not constitute "other insurance," and

does not affect EMC's obligation, if any, to indemnify Hughes for her loss.

### *CONCLUSION*

Based upon the foregoing undisputed facts and legal conclusions, the magistrate judge finds that the motion to dismiss filed by the defendant Balboa (doc. 9) is due to be and hereby is GRANTED, and that any claim for declaratory judgment as to this defendant is DISMISSED WITH PREJU-DICE. Inasmuch as Count V is the only claim for relief alleged against this defendant, Balboa is DISMISSED as a party in this action.

This order does not affect the plaintiff's claims for declaratory relief against defendants Hughes or BAC.