NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-422                                      Appeals Court

   MORONEY BODY WORKS, INC.  vs.  CENTRAL INSURANCE COMPANIES.


No. 14-P-422.

Worcester.      January 12, 2015. - August 6, 2015.

Present:  Fecteau, Wolohojian, & Massing, JJ.


Insurance, Fire, Property damage, Construction of policy,
     Coverage, Amount of recovery for loss.  Contract,
     Insurance.  Damages, Breach of contract, Repairs.
     Practice, Civil, Damages.



     Civil action commenced in the Superior Court Department on
February 13, 2012.

     The case was heard by Richard T. Tucker, J., on motions for
summary judgment.


     William A. Schneider for the defendant.
     David K. McCay for the plaintiff.


     WOLOHOJIAN, J.  We consider whether a commercial property

insurance policy issued by Central Insurance Companies (Central)

provides coverage and, if so, to what extent, for damage to a

bookmobile caused by a fire at its insured, Moroney Body Works,

Inc. (Moroney).  Central relies principally on two provisions of

its policy to support its denial of coverage. First, it contends that the "other insurance" provision means that Central's coverage does not come into play until the policy limit of a Massachusetts garage insurance policy issued to Moroney by Pilgrim Insurance Company (Pilgrim) is exhausted.[1] Second, Central argues, in the alternative, that its liability is limited to the cost of repairing the bookmobile. We conclude that because the two policies insured the same interest in the same property against the same risk, Central's "other insurance" provision applies. We also conclude that the "loss payment" provision of Central's policy limits its liability, at its election, to the cost of repair. We accordingly reverse the summary judgment in favor of Moroney on its breach of contract claim.

1. Background. The facts are undisputed. Moroney manufactures specialized truck bodies in Worcester. On April 7, 2011, a fire began in one vehicle at Moroney's facility and spread to a custom-built bookmobile that had just been completed for the city of Beverly (city). The city refused to accept delivery of the bookmobile after the fire.

Moroney had two insurance policies at the time of the fire: a commercial property policy issued by Central, and a garage

---

[1] Pilgrim entered into a settlement with the plaintiff and is no longer a party in this case.

insurance policy issued by Pilgrim.  Moroney demanded payment under both.  Central denied liability.  Pilgrim's policy provided primary coverage, and Pilgrim agreed that its policy covered the cost of repairing the bookmobile.  It paid $12,449.82 based on its appraiser's estimate of the repair costs -- an amount Moroney thought inadequate given its own estimate of the repair costs.

Moroney sued both insurers.  The claims against Pilgrim were resolved when it paid an additional amount which, in combination with Pilgrim's earlier payment, resulted in Moroney receiving more than the repair costs.  Central, on the other hand, persisted in denying liability.  Ultimately, Central and Moroney cross-moved for summary judgment, and those motions were decided in favor of Moroney on its breach of contract claim.[2]

2.  Discussion.  a.  Other insurance.  Central does not dispute that the damage to the bookmobile was "direct physical loss of or damage to Covered Property at [Moroney's] premises," as covered by its policy.  Instead, Central argues that its coverage is excess to coverage under Pilgrim's garage insurance policy and that it (Central) therefore has no liability unless the loss exceeds the coverage limit of Pilgrim's policy.

---

[2] Moroney also made claims for breach of the covenant of good faith and fair dealing and a violation of G. L. c. 93A. The motion judge allowed Central's motion on these claims, and there is no appeal from that decision.

Central relies on the following "Other Insurance" provision of its policy:

> "2.  If there is other insurance <u>covering same loss or damage</u>, . . . we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable limit of insurance" (emphasis added).

"'Other insurance' clauses, clauses designed to establish a policy's relationship with other policies covering a loss, were first developed in the real property fire insurance field in order to prevent owners from overinsuring."  <u>Mission Ins. Co</u>. v. <u>United States Fire Ins. Co</u>., 401 Mass. 492, 495 (1988).  Such clauses apply where there are two or more concurrent policies that "insure the same risk and the same interest, for the benefit of the same person, during the same period."[3]  <u>Boston Gas Co</u>. v. <u>Century Indem. Co</u>., 454 Mass. 337, 361 n.36 (2009), quoting from 23 Holmes, Appleman on Insurance § 145.4[C], at 34

_____

[3] "In general, there are three types of 'other insurance' clauses -- pro rata, escape, and excess."  <u>Mission Ins. Co</u>. v. <u>United States Fire Ins. Co</u>., <u>supra</u>.  "Pro rata clauses provide that, if other insurance is available to the insured, the policy containing the pro rata clause will contribute to the loss in the proportion that its policy limit bears to the total limit of all available policies.  Escape clauses provide that, if there is other insurance available to the insured, the policy containing the escape clause will pay no benefits.  Excess clauses provide that, if there is other insurance available to the insured, the policy containing the excess clause will pay no benefits until such other insurance is exhausted."  <u>Id</u>. at 495 n.3.  The "other insurance" clause in this case made Central's coverage excess to "the amount due" under the Pilgrim policy.

(2d ed. 2003).  "It is generally held that in order for an other insurance clause to operate in the insurer's favor, there must be both an identity of the insured interest and an identity of risk."[4]  15 Couch, Insurance § 219:14 (3d ed. 2005).

Our cases have not previously addressed what it means for the insured interests of two different policies to be the same.[5] We begin by noting that although Pilgrim's policy was a garage liability policy, and Central's was a commercial property policy, that distinction alone is not dispositive.  Instead, the inquiry turns on the terms of the respective policies.

Although the record does not explicitly disclose the basis upon which Pilgrim made payment, coverage under the Pilgrim policy apparently lay under Section VII (Physical Damage

---

[4] "The rule that the risks be identical in order for an 'other insurance' clause to apply does not mean that the total possible coverage under each policy be the same, but merely that with respect to the harm which has been sustained there be coverage under both policies."  15 Couch, Insurance § 219:14. There is no dispute that the same risk (fire) in this case was covered under both policies.  Cf. McCormick v. Travelers Indem. Co., 22 Mass. App. Ct. 636, 639 (1986) (pro rata "other insurance" clause did not apply where the two policies insured against different risks, specifically, one insured against damage caused solely by windstorms and one against damage caused by water).  See also Liquor Liab. Joint Underwriting Assn. of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 324 n.6 (1995), citing 8A Appleman, Insurance § 4907.65, at 367-368 (1981).

[5] Cases involving "other insurance" clauses often arise when two policies have competing other insurance provisions and the question is how to allocate or divide liability between the two carriers.  See, e.g., Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492 (1988).  We are not presented with such a situation here.

Coverage), which provided comprehensive coverage for covered "autos" damaged by fire.[6] Covered "autos" included vehicles owned by Moroney, such as the bookmobile. The Central policy covered "direct physical loss of or damage to Covered Property at the premises." "Covered Property" included Moroney's building, fixtures, machinery, equipment, personal property owned by Moroney to maintain or service the building, and

_____

[6] We have inferred the basis of coverage from the fact that the joint statement of undisputed facts states that Moroney owned the bookmobile. Had ownership of the bookmobile not been admitted, or if the city were the owner, then our analysis would have been different. In that case, Moroney's interest in the bookmobile would have been as a bailee for hire, see Wright v. Heil Equip. Co., 357 Mass. 74 (1970) (repairer was bailee for hire of tractor left in its custody for repairs); Black's Law Dictionary 141 (6th ed. 1990) ("a mechanic to whom an automobile is entrusted for repairs is a bailee for hire"), and coverage would lie under a different provision of the Pilgrim policy. Bailees generally have been held to have an insurable interest in the bailed property that is separate from the interest of the bailor. See, e.g., 43 Am. Jur. 2d Insurance § 186 (2013); 44 Am. Jur. 2d Insurance § 939 (2013). In those circumstances, the insured interest under the Pilgrim and Central policies would not have been the same, and Central would not have been entitled to the benefit of the "other insurance" provision in its policy. See Atlantic Mut. Ins. Co. v. Cooney, 303 F.2d 253, 268 (9th Cir. 1962); Employers' Mut. Cas. Ins. Co. v. Hughes, 780 F. Supp. 2d 1204, 1208 (N.D. Ala. 2011) (insured's interest in value of her property is not the same as her interest in making her mortgage payment in event home becomes uninhabitable, and thus other insurance clause does not apply); De Foor v. Northbrook Excess & Surplus Ins. Co., 128 Ill. App. 3d 929, 936 (1984) (vendor's legal interest in property is distinct and different from vendee's equitable interest in insured property). See also generally the discussion in United Natl. Ins. Co. v. Mundell Terminal Servs., Inc., 915 F. Supp. 2d 809, 823-825 (W.D. Tex. 2012).

business personal property.[7]  Thus, although employing different language, both policies insured Moroney's interest as owner of the bookmobile from the risk of fire.  Because both policies insure the same insured's interest (Moroney's ownership) in the same property (bookmobile) against the same risk (fire), Central's "other insurance" provision applies.  Accordingly, Central's liability does not begin until Pilgrim's policy limit is exhausted.[8]

b.  <u>Loss payment</u>.  Even if Central were not entitled to the benefit of its "other insurance" provision, Moroney would fare no better because of Central's loss payment provision:

"4.  Loss Payment

"a.  In the event of loss or damage . . . at our
     option, we will either:

"1)  Pay the value of lost or damaged property;
"2)  Pay the cost of repairing or replacing the
     lost or damaged property . . . ;
"3)  Take all or any part of the property at an
     agreed or appraised value; or
"4)  Repair, rebuild or replace the property with
     other property of like kind and quality . . . .

"We will determine the value of lost or damaged
property, or the cost of its repair or replacement,

_____

[7] Although we need not decide the question, within the category of business personal property, coverage for the bookmobile could be found either as "personal property owned by you and used in your business," or as "stock," defined as "merchandise held in storage or for sale, raw materials and in-process or finished goods."

[8] It is undisputed that Pilgrim's policy limit has not been reached.

in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition."

The function of this provision is unambiguous.  See Olson v. Le Mars Mut. Ins. Co., 269 Neb. 800, 807-808 (2005); Colorado Cas. Ins. Co. v. Sammons, 157 P.3d 460, 465, 466 (Wyo. 2007). Compare Society of St. Vincent De Paul in the Archdiocese of Detroit v. Mt. Hawley Ins. Co., 49 F. Supp. 2d 1011, 1018 (E.D. Mich. 1999).  By its terms, the provision allows Central to select whichever payment option it prefers, "effectively insur[ing] the property for the lesser of actual cash value or the cost to repair or replace the damaged property."  Olson v. Le Mars Mut. Ins. Co., supra at 808.  See Colorado Cas. Ins. Co. v. Sammons, supra.  The judge accordingly erred when he awarded Moroney $126,232.20, representing the difference between the original contract price for the bookmobile ($156,900) and the amounts received in settlement with Pilgrim (totaling $30,667.80).  Moroney was not entitled to receive anything more than its repair costs.

Contrary to Moroney's argument, the last paragraph of the quoted loss payment provision does not alter Central's right to choose the lesser measure of damages.  Instead, it pertains only to the method of valuing the loss.  In other words, Central retained the right to choose whether to pay to replace or repair

the bookmobile, but the value of those repair or replacement costs was subject to the valuation provision of the policy.[9] Moroney is also not helped by the valuation provision in the premier plus endorsement, which states that finished stock will be valued at the selling price.[10] That provision modifies the valuation provision of the policy, not the loss payment provision.

3. Conclusion. For these reasons, we conclude that Central is relieved of liability under the other insurance provision of its policy, and that, even were that not the case, its exposure would be limited to Moroney's repair costs.

That portion of the judgment that entered in Moroney's favor on its breach of contract claim is reversed. In all other respects the judgment is affirmed.

So ordered.

---

[9] The valuation provision provided: "We will determine the value of Covered Property in the event of loss or damage as follows: . . . At actual cash value as of the time of loss or damage." This provision does not apply because Central chose to compensate Moroney only for its repair costs.

[10] "We will determine the value of finished 'stock' you manufacture, in the event of loss or damage, at: (1) The selling price, as if no loss or damage occurred; (2) Less discounts and expenses you otherwise would have had."